Charles DELANEY, Jr., Appellant,

v.

**UNION CARBIDE CORPORATION, Appellee.**

No. 84–1121.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1984.

Decided Nov. 19, 1984.

Simmons Smith, Hot Springs, Ark., for appellant.

Bruce R. Lindsey, Little Rock, Ark., for appellee.

Before LAY, Chief Judge, and McMILLIAN and ARNOLD, Circuit Judges.

ARNOLD, Circuit Judge.

Charles Delaney, Jr., brought this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. (ERISA), against Union Carbide Corporation, his former employer, seeking benefits under a pension plan. The District Court [1] granted summary judgment for Union Carbide, holding that a decision by a medical arbitration board against Delaney barred the action. Delaney argues on appeal that the arbitration clause contained in the collectively bargained Pension, Group Insurance, and Dental Agreement is unenforceable. We hold that the agreement to arbitrate is valid and enforceable and therefore affirm.

### I.

Delaney started working for Union Carbide in 1967. He was a heavy-equipment operator. In August 1979, he became ill at work. He was entitled to benefits and therefore was paid approximately $5,000 under the Non-Occupational Disability Pay Plan then in effect between his union and the company. In February 1980, plaintiff applied for disability benefits under the Union Carbide Pension, Group Insurance, and Dental Agreement, alleging that he was totally and permanently disabled. Benefits were denied on the ground that Delaney was not totally and permanently disabled because he could be rehabilitated to perform clerical work. Plaintiff sought review of the denial by the procedure set out in the pension agreement, which provides, Designated Record (D.R.) 33:

If any dispute arises as the result of the denial of a bargaining unit employee's claim that he is totally and permanently disabled within the meaning of the Pension Plan or that such a disabled former employee continues to be so disabled, the dispute shall be resolved in the following

manner upon the filing with the Company of a written request for review by such employee or former employee not more than 60 days after receipt of the denial:

The employee shall be examined by a physician appointed for the purpose by the Company and by a physician appointed for the purpose by the Union. If they disagree concerning whether the employee is totally and permanently disabled, the question shall be submitted to a third physician selected by such two physicians. The medical opinion of the third physician, after examination by him of the employee and consultation with the other two physicians, shall be final and binding on the Company, the Union and the employee. The fees and expenses of the third physician shall be shared equally by the Company and the Union.

The Union appointed Dr. G. Maruthur to examine the plaintiff, and the company appointed Dr. Philip J. Peters. The doctors disagreed as to whether Delaney was totally and permanently disabled, so they submitted the question to Dr. Richard M. Jordan. Dr. Jordan's opinion was that plaintiff does not have a total and permanent disability.

### II.

The principal question presented is the legal validity of the arbitration clause. Delaney argues that ERISA confers statutory rights on him, including the right to file suit in a federal court, and that these rights should not be impaired by an agreement to arbitrate made by his union and his employer. The Supreme Court has held that certain statutory rights are not subject to waiver under a grievance-arbitration clause. See *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (Fair Labor Standards Act); *Alexander v. Gard-*

---

**1.** The Hon. Oren Harris, Senior United States District Judge for the Eastern and Western Districts of Arkansas.

*ner-Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) (Title VII). He contends that the purpose of ERISA is to protect pension-plan participants in much the same way as securities laws protect investors. Arbitration "snip[s] and whittle[s] at federally granted rights," appellant's brief at 7, so it should be used only to encourage settlement and should not affect a pension-plan participant's right to come into court.

We noted this question but did not decide it in *Mahan v. Reynolds Metals Co.,* 739 F.2d 388 (8th Cir.1984) (per curiam). See also *Adams v. Gould, Inc.,* 687 F.2d 27, 33 (3d Cir.1982).

The key distinction between the present case and cases like *Barrentine* and *Alexander,* we think, is that here the rights that plaintiff seeks to enforce are wholly created by contract, the very contract that also contains the arbitration clause plaintiff seeks to avoid. The principal basis of jurisdiction asserted by plaintiff is § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), which provides for civil actions by a plan participant or beneficiary "to recover benefits due to him under the terms of his plan, [or] to enforce his rights under the terms of the plan ...." The present case alleges no procedural deviation in the arbitration process, either from the agreement creating the process or from ERISA itself. Nor is a violation claimed of any of the specific requirements of the statute. Instead, plaintiff alleges simply that he is in fact totally and permanently disabled, that the decision of the medical arbitrator to the contrary is incorrect, and that he is therefore entitled to benefits under the plan. That is the very sort of question that a medical arbitration board is most qualified to address, and it is clearly covered by the unambiguous words of the agreement itself. In *Barrentine* and *Alexander,* by contrast, the rights asserted were created by statute, not by any collectively-bargained agreement. It therefore made sense to hold that they could not be extinguished by a collectively-bargained arbitration procedure. Nor is plaintiff here so defenseless as the naive securities inves-

tor to whom he likens himself. He has the union to represent his interests, and there is no suggestion that it did not do so faithfully and diligently.

This is not a case like *Schneider Moving & Storage Co. v. Robbins,* — U.S. —, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984), *aff'g* 700 F.2d 433 (8th Cir.1983) (en banc), in which there was no clear agreement for the submission to arbitration of disputes between the plaintiff trustees and the employer of the plan beneficiaries. No question is raised here of the union's duty to represent Delaney, nor of the manner in which it has carried out this duty. Nor is this an action against trustees for a decision made by them without benefit of arbitration. In such cases, trustees' decisions are reviewable in court under an arbitrary-and-capricious standard. See *Short v. Central States, Southeast & Southwest Areas Pension Fund,* 729 F.2d 567, 571 (8th Cir. 1984); *Phillips v. Kennedy,* 542 F.2d 52, 54 (8th Cir.1976).

In short, the arbitration award is to be given the same kind of weight here as it would receive in actions under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. In such cases, it is commonly said that the award is binding if it draws its essence from the collective-bargaining contract. See, *e.g., United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Here, of course, the question submitted to the arbitrators was not really the interpretation of the collectively-bargained agreement, but rather a question of fact: whether Delaney was totally and permanently disabled from any kind of work. It is not denied that the procedure established by the agreement was followed. The agreement itself makes no mention of specific medical conditions that might or might not render an employee totally and permanently disabled. No fraud or collusion is alleged. In these circumstances, the award is final and binding, and the courts may not review its merits.

The judgment of the District Court is

Affirmed.