AMERICAN FEDERATION OF TELE-
VISION AND RADIO ARTISTS
HEALTH AND RETIREMENT FUNDS,
James F. Sirmons, Marion Preston,
John C. Hall, Jr., and Mel Brandt, Ap-
pellants,

v.

WCCO TELEVISION, INC., Appellee.

No. 90–5284.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 15, 1991.

Decided June 11, 1991.

Robert D. Metcalf, Minneapolis, Minn.,
for appellants.

Carol A. Ellingson, St. Paul, Minn., for appellee.

Before LAY, Chief Judge, FAGG and BOWMAN, Circuit Judges.

LAY, Chief Judge.

This appeal arises out of a suit for delinquent trust fund contributions under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1132(a)(3) and 1145. It is brought by the American Federation of Television and Radio Artists Health and Retirement Funds (Funds) and individual trustees of the Funds. The employer defendant is WCCO Television, Inc. (WCCO). The district court granted summary judgment in favor of WCCO and denied the plaintiffs' partial motion for summary judgment. We find the district court's analysis not in accord with existing legal principles set forth by the Supreme Court and contrary to the well reasoned opinion of the Third Circuit. *See Moldovan v. Great Atl. & Pac. Tea Co.*, 790 F.2d 894 (3d Cir.1986), *cert. denied*, 485 U.S. 904, 108 S.Ct. 1074, 99 L.Ed.2d 233 (1988). We reverse and remand for further proceedings.

## I.

Since 1969, WCCO and the American Federation of Television and Radio Artists, Twin Cities Local (Union) have entered into successive collective bargaining agreements that obligate WCCO to make pension and welfare contributions to the Funds on behalf of its employees. The collective bargaining agreements also have bound WCCO to a trust agreement which provides that "[t]he Trustees may take any action deemed by them advisable or necessary to enforce payment of the contributions due [to the Funds] ... including ... proceedings at law, in equity or by arbitration." AFTRA Health and Retirement Funds Agreement and Declaration of Trust, Art. III, Sec. 4 (*Jt.App.* at 99–100).

Sometime prior to 1979 WCCO began utilizing freelance performers and producers. It is undisputed that WCCO made no contributions to the Funds on behalf of these freelance employees. In July, 1986, the Union asked WCCO to make contributions for employees doing freelance work. When WCCO refused, the matter was submitted to arbitration. On June 10, 1988, the arbitrator found that the collective bargaining agreement in effect required WCCO to make contributions to the Funds on behalf of the freelance employees. The arbitrator, however, ordered WCCO to pay contributions to the Funds *only* on a prospective basis.[1] The Funds and the trustees then brought this action to enforce WCCO's obligation to contribute retroactively to the Funds on behalf of the freelancers and to obtain full trust agreement and statutory remedies.

The district court granted WCCO's motion for summary judgment and dismissed the plaintiffs' claim on the ground that the suit was precluded by the prior arbitration award. *American Fed'n of Television & Radio Artists Health & Retirement Funds v. WCCO Television, Inc.*, 734 F.Supp. 893 (D.Minn.1990). The court reasoned that the arbitration award had a conclusive effect because the trustees' rights to contribution were created by the collective bargaining agreement. *Id.* at 895. The court held that the Funds and the trustees could be bound by the arbitration award even though they were not parties to the arbitration proceeding because the Union, which initiated the arbitration action, and the trustees had a common interest to compel WCCO to contribute to the Funds. *Id.* at 896. The court also denied the plaintiffs' motion for partial summary judgment in which the plaintiffs sought a ruling that the arbitration award collaterally estopped WCCO from challenging its obligation to contribute to the Funds. This appeal followed.

## II.

A. Preclusive Effect of the Prior Arbitration Award

█ The district court's holding is contrary to the principles established in *Central States, Southeast & Southwest Areas*

---

1. The arbitrator reasoned that the Union was dilatory in bringing its claim and that it was

only fair that WCCO be allowed to make financial plans.

*Pension Fund v. Central Transp., Inc.,* 472 U.S. 559, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985), and *Schneider Moving & Storage Co. v. Robbins,* 466 U.S. 364, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984). It is true, as the district court reasoned, that neither of these cases involved the precise question of the preclusive effect of arbitration on a subsequent suit to enforce contribution to an employee benefit plan. In *Central States,* however, the Supreme Court recognized that trustees need not rely on a union to monitor employers' compliance with their trust obligations. 472 U.S. at 577, 105 S.Ct. at 2843. The Court observed that an individual union's duty extends only to the members of the bargaining unit it represents, while a trustee's duty extends to all the participants and beneficiaries of a multi-employer plan. *Id.* at 576, 105 S.Ct. at 2843. The Court also stated:

[A] local union's duties to bargaining-unit workers is a general duty to act in the group's interests regarding the overall terms and conditions of employment. The trustees' duty, in contrast, is to provide specific benefits to those who are entitled to them in accordance with the terms of a plan. That the general nature of a union's duty may result in less than full protection to individual entitlements has been well recognized in our cases, and we have accordingly refrained from making enforcement of such entitlements rest primarily on union action.

*Id.* at 576–77, 105 S.Ct. at 2843.

The basis of the holding in *Central States* is found in the affirmance of this court's en banc decision in *Robbins v. Prosser's Moving & Storage Co.,* 700 F.2d 433 (8th Cir.1983), *aff'd sub nom. Schneider Moving & Storage Co. v. Robbins,* 466 U.S. 364, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984). The Supreme Court held in *Schneider Moving* that the trustees of two multi-employer trust funds could seek judicial enforcement of the trust provisions without first exhausting the arbitration proceedings set forth in the collective bargaining agreement. 466 U.S. at 376, 104 S.Ct. at 1851. The Supreme Court recognized that a union's arrangements with an employer could compromise the broader interests of a multi-employer trust fund:

Each of the participating unions and employers has an interest in the prompt collection of the proper contributions from each employer. Any diminution of the fund caused by the arbitration requirements of a particular employer's collective-bargaining agreement would have an adverse effect on the other participants. The enforcement mechanisms established in the trust agreements protect the collective interests of the parties from the delinquency of individual employers by allowing the trustees to seek prompt judicial enforcement of the contribution requirements.

466 U.S. at 373, 104 S.Ct. at 1849 (footnote omitted).

In *Moldovan v. Great Atl. & Pac. Tea Co.,* 790 F.2d 894 (3d Cir.1986), *cert. denied,* 485 U.S. 904, 108 S.Ct. 1074, 99 L.Ed.2d 233 (1988), the Third Circuit addressed the specific issue raised in this case. The court held that a prior arbitration proceeding between an employer and a union did not preclude the trustees of a multi-employer welfare benefit fund from commencing an action against the employer for contributions allegedly due under a collective bargaining agreement. *Id.* at 900. The court noted that the trustees were not parties to the arbitration proceeding and had beneficiaries who were not represented by the union at the arbitration. Consistent with the holdings in *Schneider Moving* and *Central States,* the court recognized that "[t]here is ... an inherent conflict between the interests of members of ... [the] bargaining unit and the interests of other fund beneficiaries." *Id.* at 897. The court concluded that "[t]he conflict of interest ... identified in ... [*Schneider Moving* ] may also be present in cases where the employer and the union arbitrate *before* the trustees of a fund act." *Id.* at 898 (emphasis added).

WCCO argues that certain dicta in *Barrentine v. Arkansas–Best Freight Sys., Inc.,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), should control. In *Barrentine,* the Court was faced with a suit by individual employees seeking overtime wages under the Fair Labor Standards Act (FLSA). Although the Court held that the

prior arbitration did not preclude the employees' wage claims under FLSA, it recited one exception from which WCCO claims support. The Supreme Court observed: "While courts should defer to an arbitral decision where the employee's claim is based on rights arising out of the collective-bargaining agreement, different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers." *Id.* at 737, 101 S.Ct. at 1443. WCCO concludes that *Barrentine* should govern because the trustees' claims are based on rights arising out of the collective bargaining agreement.

We believe this argument overlooks the fact that the trustees were not parties to the collective bargaining agreement or the prior arbitration proceeding. The district court properly recognized that the trustees are not in privity with the Union as a matter of law even though the trustees and the Union had a common interest. As is made clear in *Barrentine*, employees are bound by prior arbitration when the employees are bound (barring unfair representation) by the actions of a union. *Id.* Because the trustees are not bound by the actions of the Union, *Barrentine* is not controlling.[2]

■ Federal labor law policy favoring arbitration must yield to the competing policy that "a member of the bargaining unit may bring a separate suit if his claim, although perhaps comprehended by the collective bargaining agreement, is also based upon federal statutory rights separate from that agreement." *Moldovan*, 790 F.2d at 896. Here, of course, the Funds and the trustees are distinct from a member of the bargaining unit. The Funds and the trustees' claim admittedly is comprehended by the collective bargaining agreement. ERISA, however, provides the standing and authority for the Funds and the trustees to make an independent claim for contribution deficiencies.[3]

WCCO also argues that the arbitration award is "final and binding" pursuant to the arbitration clause in the collective bargaining agreement. It notes that neither WCCO nor the Union brought a motion to vacate or modify the arbitrator's award and that the Funds and the trustees do not contend that the arbitrator's ruling was capricious or arbitrary. WCCO also contends that this court may not set aside the arbitrator's award simply because it is dissatisfied with the prospective nature of the remedy. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) (holding that a reviewing court may not reconsider the merits of an arbitration award merely because it disagrees with the arbitrator's factual findings, contract interpretations, or choice of remedies). We find these arguments meritless in light of the fact that the Funds and the trustees were not parties to the arbitration proceeding and are not in

---

**2.** The district court found that the arbitration award had a preclusive effect because the trustees' rights were created by the collective bargaining agreement based on the holding in *Delaney v. Union Carbide Corp.*, 749 F.2d 17 (8th Cir.1984). We find the district court's reliance on *Delaney* to be misplaced. In *Delaney*, this court held that an employee's action to recover disability benefits under a pension plan was barred by a medical arbitrator's decision. The court reasoned that the rights the employee sought to enforce were created by a pension agreement which contained an arbitration clause. The court, however, distinguished *Schneider Moving* stating that "[n]o question is raised here of the union's duty to represent [the employee], nor of the manner in which it has carried out this duty." *Id.* at 19. As discussed above, the principles established in *Schneider Moving* are applicable to the present case. The trustees and the Funds specifically argue that

the Union did not satisfy the trustees' duty to all the beneficiaries of the Funds by arbitrating the issue of pension and welfare contributions for freelancers employed by WCCO. The Third Circuit in *Moldovan* adopted this reasoning. We find *Moldovan's* reasoning compelling in this case.

**3.** 29 U.S.C. § 1145 (1988) provides that "[e]very employer who is obligated to make contributions to a multiemployer plan ... under the terms of a collectively bargained agreement shall, *to the extent not inconsistent with law,* make such contributions in accordance with the terms and conditions of ... such agreement."

29 U.S.C. § 1132(a)(3) (1988) states that "[a] civil action may be brought by a ... [trustee] ... to obtain ... appropriate equitable relief ... to enforce any provisions of this subchapter or the terms of the plan."

privity with WCCO. We therefore vacate the grant of summary judgment in favor of WCCO.

**B. Offensive Use of Collateral Estoppel**

■ In light of our holding that the prior arbitration award does not preclude the plaintiffs' statutory right under ERISA to recover unpaid contributions from WCCO, we must now address the district court's denial of the plaintiffs' partial motion for summary judgment. The Funds and the trustees contend that the prior arbitration award bars WCCO from relitigating the question of whether WCCO is obligated to make pension and welfare contributions to the Funds on behalf of the freelance performers and producers. Under the doctrine of collateral estoppel, an arbitrator's findings will bind a court if

> (1) the issue is identical to one in the prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party ... to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*City of Bismarck v. Toltz, King, Duvall, Anderson & Assocs., Inc.,* 855 F.2d 580, 582 (8th Cir.1988).

■ The Supreme Court held in *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), that a litigant who was not a party to a prior judgment may use the judgment "offensively" to prevent a defendant from relitigating issues decided in the previous action. The Court stated, however, that a trial court should preclude the use of offensive collateral estoppel if "a plaintiff could easily have joined in the earlier action or ... [its] application ... would be unfair to a defendant." *Id.* at 331, 99 S.Ct. at 652. In *Parklane,* the Court found that it would be unfair to apply offensive collateral estoppel against a defendant who is sued in the first action for minimal damages because he may have had little incentive to defend vigorously. *Id.* at 330, 99 S.Ct. at 651.

The issue involved in the prior arbitration, specifically WCCO's obligation to contribute to the Funds, is the central issue in this case. Moreover, WCCO was a party in the earlier arbitration proceeding and had a full and fair opportunity to litigate the issue in that proceeding. The arbitrator's award also constitutes a final judgment for the purposes of collateral estoppel. *See Wellons, Inc. v. T.E. Ibberson Co.,* 869 F.2d 1166 (8th Cir.1989). We note that the trustees could not have joined in the earlier arbitration proceeding because the arbitration clause of the collective bargaining agreement provides only for the arbitration of disputes between WCCO and the Union. WCCO also had every incentive to defend vigorously in the arbitration proceeding because its obligation to contribute to the Funds on behalf of the freelancers depended on the arbitrator's decision. We conclude that WCCO is collaterally estopped from challenging the arbitrator's finding that WCCO is obligated to make contributions to the Funds on behalf of the freelancers.

Accordingly, the judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.